# EXHIBIT 1

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/18/2026 5:25 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By P. Rodriguez, Deputy Clerk

Rosie Zilifyan, Esq. State Bar No. 328868
RZilifyan@Shegerianlaw.com
Lucy Igarian, Esq., State Bar No. 363658
LIgarian@Shegerianlaw.com
SHEGERIAN & ASSOCIATES
320 N. Larchmont Boulevard
Los Angeles, California 90004
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Attorneys for Plaintiff,
LEWIS NOLDEN

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| LEWIS NOLDEN,<br><br>Plaintiff,<br><br>vs.<br><br>SPACEX, REZA KASRAVI, and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.: 26STCV26061<br><br>**PLAINTIFF LEWIS NOLDEN'S COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) DISCRIMINATION IN VIOLATION OF THE FEHA;**<br><br>**(2) HOSTILE WORK ENVIRONMENT HARASSMENT IN VIOLATION OF THE FEHA;**<br><br>**(3) RETALIATION IN VIOLATION OF THE FEHA;**<br><br>**(4) FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE FEHA;**<br><br>**(5) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA;**<br><br>**(6) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, OR RETALIATION IN VIOLATION OF FEHA;**<br><br>**(7) BREACH OF EXPRESS ORAL CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**<br><br>**(8) BREACH OF IMPLIED-IN-FACT** |

**CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

**(9) NEGLIGENT HIRING, SUPERVISION, AND RETENTION;**

**(10) WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF PUBLIC POLICY;**

**(11) WHISTLEBLOWER RETALIATION (LABOR CODE § 1102.5);**

**(12) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS


Page

SUMMARY ..... 1

PARTIES ..... 1

VENUE ..... 3

FACTS COMMON TO ALL CAUSES OF ACTION ..... 3

FIRST CAUSE OF ACTION ..... 11

Discrimination on the Bases of Race; Disability; Color; Ancestry; Sex/Gender and/or National Origin (Violation of Government Code § 12900, *et seq.*) Against Entity Defendants; and Does 1 to 100, Inclusive ..... 11

SECOND CAUSE OF ACTION ..... 12

Hostile Work Environment Harassment on the Bases of Race; Disability, Medical Leave; Color; Ancestry; Sex/Gender, and/or National Origin (Violation of Government Code § 12900, *et seq.*) Against All Defendants; and Does 1 to 100, Inclusive ..... 12

THIRD CAUSE OF ACTION ..... 13

Retaliation for Engaging in Protected Activity (Violation of Government Code § 12900, *et seq.*) Against Entity Defendants; and Does 1 to 100, Inclusive ..... 13

FOURTH CAUSE OF ACTION ..... 15

Failure to Provide Reasonable Accommodation (Violation of Government Code § 12940(a), (i), (m), (n)) Against Entity Defendants; and Does 1 to 100, Inclusive ..... 15

FIFTH CAUSE OF ACTION ..... 16

Failure to Engage in Interactive Process (Violation of Government Code § 12940(a), (i), (m), (n)) Against Entity Defendants; and Does 1 to 100, Inclusive ..... 16

SIXTH CAUSE OF ACTION ..... 17

Failure to Prevent Discrimination, Harassment, or Retaliation (Violation of Government Code § 12900, *et seq.*) Against Entity Defendants; and Does 1 to 100, Inclusive ..... 17

SEVENTH CAUSE OF ACTION ..... 18

Breach of Express Oral Contract Not to Terminate Employment Without Good Cause (*Marvin v. Marvin* (1976) 18 Cal.3d 660) Against Entity Defendants; and Does 1 to 100, Inclusive ..... 18

EIGHTH CAUSE OF ACTION ........................................................................................ 19

Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622) Against Entity Defendants; and Does 1 to 100, Inclusive........ 19

NINTH CAUSE OF ACTION........................................................................................... 19

Negligent Hiring, Supervision, and Retention (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038) Against Entity Defendants; and Does 1 to 100, Inclusive......... 19

TENTH CAUSE OF ACTION ......................................................................................... 20

Wrongful Termination of Employment in Violation of Public Policy (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167) Against Entity Defendants; and Does 1 to 100, Inclusive.................................................................................... 20

ELEVENTH CAUSE OF ACTION .................................................................................. 21

Whistleblower Retaliation (Violation of Labor Code § 1102.5, *et seq.*) Against Entity Defendants; and Does 1 to 100, Inclusive....................................... 21

TWELFTH CAUSE OF ACTION.................................................................................... 22

Intentional Infliction of Emotional Distress (*Hughes v. Pair* (2009) 46 Cal.4th 1035) Against All Defendants; and Does 1 to 100, Inclusive .................................. 22

PRAYER ............................................................................................................................ 23

Plaintiff, Lewis Nolden, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Lewis Nolden ("plaintiff" or "Nolden"), whose employment with defendant SpaceX ("SpaceX") (hereinafter collectively, "Entity Defendants") was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(c)(6), Labor Code section 1102.5(j), and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Nolden is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Defendant SpaceX is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Defendants' place of business, where the following causes of action took place, was and is in the County of Los Angeles, at 1 Rocket Road, Hawthorne CA, 90047.

3. Reza Kasravi ("Kasravi") is, and at all times mentioned in the Complaint was, a Supervisor and or managing agent of SpaceX and a resident of Los Angeles, California.

4. *Doe defendants:* Defendants Does 1 to 100, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such

agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

5. *Relationship of defendants:* All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

6. Entity Defendants both directly and indirectly employed plaintiff Nolden, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

7. In addition, Entity Defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

///

8. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## VENUE

9. The actions at issue in this case occurred in the State of California, in the County of Los Angeles. Under the California Fair Employment and Housing Act, this case can alternatively, at Plaintiff's choice, be filed:

> [I]n any county in the state in which the unlawful practice is alleged to have been committed, in the county in which the records relevant to the practice are maintained and administered, or in the county in which the aggrieved person would have worked or would have had access to the public accommodation but for the alleged unlawful practice, but if the defendant is not found within any of these counties, an action may be brought in the county of the defendant's residence or principal office.

(California Government Code § 12965(c)(3).)

10. Here, the plaintiff worked primarily in California in the County of Los Angeles. The location where plaintiff worked was located Hawthorne, California. The majority of the unlawful actions on the part of the defendants occurred at Hawthorne location.

11. "[I]n the absence of an affirmative showing to the contrary, the presumption is that the county in which the title of the actions shows that the case is brought is, prima facie, the proper county for the commencement and trial of the action." (*Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 928.) The FEHA venue statute – section 12965(b) – thus affords a wide choice of venue to persons who bring actions under FEHA. (*Brown v. Superior Court* (1984) 37 Cal.3d 477, 486.) "[T]he special provisions of the FEHA venue statute control in cases involving FEHA claims joined with non-FEHA claims arising from the same facts." (*Id*. at 487.)

## FACTS COMMON TO ALL CAUSES OF ACTION

12. *Plaintiff's hiring:* Plaintiff Lewis McEndree Nolden ("Nolden") is a skilled structural and propulsion technician who began employment with Space Exploration

Technologies Corp. ("Entity Defendant" or "SpaceX") in or around October 31, 2012, as a temporary employee on the Critical Movement Team.

a. On or around March 14, 2013, SpaceX promoted Nolden to a permanent position as a Structural Technician on the Falcon 9 Second Stage team.

b. From 2013 through 2022, Nolden worked as a Structural Technician and gained extensive experience across multiple SpaceX programs and disciplines, including structural assembly, research and development, prototype development, laser welding, and spot welding.

c. In or around 2021, Nolden transferred to the Starship program.

d. In or around 2022, Nolden transferred to Starship Structures.

e. In early 2025, after approximately twelve years of continuous employment with SpaceX, Nolden transferred to Starship Propulsion Actuator and began reporting to Defendant Reza Kasravi ("Kasravi").

13. *Plaintiff's job performance:* Throughout his approximately thirteen-year tenure with SpaceX, Nolden performed his duties successfully across multiple programs and departments. Before Kasravi became his supervisor in early 2025, Nolden had never received a write-up or disciplinary action during his entire career with SpaceX.

a. Nolden received multiple company awards for his productivity and workmanship.

b. SpaceX selected Nolden to serve as a lead technician for approximately six months, during which he supervised twelve employees.

c. SpaceX also entrusted Nolden with training multiple new technicians across various programs and departments.

d. After transferring to the propulsion team under Kasravi, Nolden trained four new team members, mastered a new potting machine, and completed all assigned harnessing and soldering classes.

e. Kasravi's own 2025 annual performance review confirmed Nolden's continued contributions. Kasravi noted that there had been no workmanship issues

reported for more than seven months, described Nolden as an exemplary mentor to fellow technicians, and acknowledged his positive attitude in training new crew members. Nolden received an overall performance rating of 3.0, or "Good."

14. *Plaintiff's protected status and activity:*

a. At all relevant times, Nolden is Black. Nolden was the only Black technician in his department or work area, which consisted of approximately 25 to 30 employees. SpaceX employed approximately 3,500 to 4,000 employees at its Hawthorne location.

b. During his employment, Nolden complained about and opposed conduct he believed constituted race-based differential treatment, including Kasravi's treatment of Black employees and applicants and the heightened scrutiny and monitoring Nolden experienced after transferring under Kasravi.

c. Nolden reported to Lead Eric Alvarado ("Alvarado") and Supervisor Luis Charlaix ("Charlaix") that he was being followed to the bathroom by Kasravi and Dylan Carrion ("Carrion"), that Kasravi had made an inappropriate sexual comment toward him, and that he believed he was being targeted and harassed.

15. *Defendants' adverse employment actions and behavior:*

a. Approximately one year before Nolden's termination, Nolden referred a qualified Black aerospace worker with more than 25 years of experience to Kasravi for an open position. Nolden observed the applicant's resume on Kasravi's computer. Upon information and belief, Kasravi thereafter stated words to the effect of, "We don't need another one of them on this shift," referring to Black individuals. The qualified Black applicant was not hired, and a less-qualified individual was selected instead.

b. After Nolden transferred to Starship Propulsion Actuator and began reporting to Kasravi in early 2025, the manner in which Nolden was treated at work changed. Despite approximately twelve years without discipline, Nolden began experiencing heightened scrutiny, excessive monitoring, and increased enforcement of workplace rules.

c. Kasravi followed Nolden to the bathroom immediately after Nolden clocked in and monitored his time usage. Carrion also participated in following and monitoring

Nolden.

d. Nolden complained to Alvarado and Charlaix that Kasravi and Carrion were following him to the bathroom. In response, Charlaix told Nolden, “I don’t know what they have against you.” Despite Nolden’s complaints, the conduct continued and there was no investigation into these events.

e. In or around April 2025, Nolden suffered a workplace injury when his finger became caught between rollers while working on an actuator. Nolden promptly reported the injury to his supervisor, Kasravi, who took him to Bayside Medical Center.

f. Because the injury was minor and Nolden remained willing and able to work with temporary modifications, Nolden specifically asked Kasravi to allow him to return on light duty rather than requiring him to take time away from work. Having worked at SpaceX for more than twelve years, Nolden knew that light-duty assignments were available and regularly utilized. At the time, Nolden was personally aware of at least three employees—Eddy Herrera, Amin Doe, and Agustin Doe—who were performing light-duty work.

g. Despite Nolden’s express request to continue working with modified duties, Kasravi told him that no light-duty work was available. Kasravi did not discuss with Nolden what temporary restrictions he had, what duties he remained capable of performing, whether his existing responsibilities could be temporarily modified, or whether any other available work could be assigned to him. Nor did Kasravi offer Nolden any alternative that would have allowed him to remain at work. Instead, Nolden was required to take approximately two weeks of disability leave, forcing him out of work.

h. When Nolden returned approximately two weeks later, he was fully recovered and able to resume his regular duties without restrictions. Despite his readiness to return to his full position, SpaceX did not restore Nolden to the same scope of responsibilities and opportunities he had before his injury. Instead, Nolden was limited primarily to work orders and paperwork.

///

i. At the same time, other employees were being trained in new areas and provided opportunities to perform additional work ahead of Nolden, despite Nolden's greater seniority and more than twelve years of experience across multiple SpaceX programs and departments. Thus, after Nolden requested temporary modified work, was told that no such work was available, and was required to remain away from work for approximately two weeks, he returned without restrictions only to find his role reduced while training and work opportunities were being provided to other employees.

j. In June 2025, Nolden received the first write-up of his approximately thirteen-year career at SpaceX. The write-up concerned a minor workmanship issue involving shrink wrap that measured three centimeters shorter than required while Nolden was still learning his new role.

k. Nolden observed non-Black employees commit similar or more serious errors, including errors that resulted in high-value parts being scrapped, without receiving discipline.

l. In January 2026, Nolden sought a transfer out of Kasravi's supervision because he felt that he was being harassed and unfairly targeted. Nolden spoke with Michael Dooley ("Dooley") and Christopher Sherwood ("Sherwood"), who oversaw the F9 Second Stage and Subassembly Departments, regarding potential transfer opportunities. Both Dooley and Sherwood were ready and willing to accept Nolden into their respective departments, but informed him that he first needed to obtain clearance from his then-supervisor, Kasravi, before the transfer could proceed.

m. Kasravi stopped and blocked the transfer process, leaving Nolden under his supervision.

n. Approximately two weeks before Nolden's termination, while Nolden and Kasravi were working together in a narrow workspace, Nolden accidentally and inadvertently bumped into Kasravi. Rather than treating the incidental contact as an ordinary workplace occurrence, Kasravi, who exercised supervisory authority over Nolden, physically approached Nolden, moved into close proximity to him, and stated,

***"Next time, pull my hair."*** Kasravi made the comment in a sexually suggestive and inappropriate manner, thereby sexualizing an otherwise innocuous workplace interaction. The conduct and comment were unwelcome. Nolden did not invite, encourage, reciprocate, or participate in the sexually charged exchange and instead immediately objected and told Kasravi that the comment was inappropriate. Kasravi's conduct subjected Nolden to unwelcome sexualized conduct in the workplace by a supervisor and contributed to an intimidating, hostile, and offensive working environment. Nolden promptly reported Kasravi's inappropriate and sexually suggestive "pull my hair" comment to Lead Eric Alvarado. Rather than expressing surprise, investigating the complaint, or treating Kasravi's conduct as an isolated incident, Alvarado responded by warning Nolden, *"Really, you got to be careful with him."*

o. Alvarado's response indicated that Kasravi's inappropriate workplace conduct was known or, at minimum, was not unexpected. Despite receiving Nolden's complaint of unwelcome sexualized conduct by his supervisor, Alvarado took no apparent steps to investigate the incident, report the complaint to Human Resources or management, separate Nolden from Kasravi, or otherwise prevent further misconduct. No prompt or effective corrective action was taken, and Nolden was required to continue working under Kasravi's supervision.

p. In February 2026, after experiencing continued heightened scrutiny, monitoring, and hostile treatment under Kasravi's supervision, Nolden raised a direct complaint with Kasravi regarding what Nolden believed to be unfair and targeted treatment. During a one-on-one meeting, Nolden sought an explanation for Kasravi's conduct toward him, asking, "What do you have against me?" Rather than address Nolden's complaint, explain the basis for the disparate treatment, or take steps to address his concerns, Kasravi summarily dismissed the complaint and responded with hostility, stating, "To hell with you, I don't have to explain anything to you." Thus, when Nolden attempted to raise concerns directly with his supervisor about the ongoing treatment he was experiencing, Kasravi refused to address those concerns and instead responded in a

hostile and dismissive manner.

16. The following week, Nolden received only the second write-up of his approximately thirteen-year career with SpaceX. The write-up concerned an allegedly backwards fastener. The issue, however, was subsequently determined to be an engineering issue rather than an error attributable to Nolden, and engineers cleared the matter. At the time, the entire team was still learning how to perform the job.

17. SpaceX subsequently determined that the same issue was occurring throughout the facility and implemented a class requirement for technicians addressing the proper procedure. Despite initially singling out Nolden for discipline over the issue, SpaceX ultimately required technicians throughout the facility to receive training on the same subject, and Nolden later became one of the employees responsible for training others on the correct procedure.

18. *Defendants' termination of plaintiff's employment:* On or about February 19, 2026, SpaceX abruptly terminated Nolden's employment after approximately thirteen years of service. HR Business Partner Anzley Holt, Carrion, Robert Hoff, and Kasravi participated in the termination meeting. Despite Nolden's lengthy tenure and years without discipline, SpaceX identified the reason for his termination only as "Workmanship Performance."

a. When Nolden asked Defendants to identify the specific workmanship or performance issues that supposedly warranted ending his approximately thirteen-year career with SpaceX, Defendants did not provide him with a clear explanation or identify a specific incident justifying the decision.

b. The termination followed closely after Nolden repeatedly raised concerns about his treatment under Kasravi. Within approximately two weeks of that confrontation, SpaceX ended Nolden's thirteen-year employment.

19. *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties,

as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

20. *Non-economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

21. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, gender/ sex and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, gender/ sex and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:* In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that

defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive him of legal rights.

22. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

23. *Exhaustion of administrative remedies:* Prior to filing this action, plaintiff exhausted his administrative remedies by filing a timely administrative complaint with the California Civil Rights Department ("CCRD"), formerly known as the Department of Fair Employment and Housing ("DFEH"), and receiving a CCRD/DFEH right-to-sue letter.

**FIRST CAUSE OF ACTION**

**Discrimination on the Bases of Race; Disability; Color;**

**Ancestry; Sex/Gender and/or National Origin**

**(Violation of Government Code § 12900, *et seq.*)**

**Against Entity Defendants; and Does 1 to 100, Inclusive**

24. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

25. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,* was in full force and effect and was binding on defendants. This statute requires defendants to refrain from discriminating against any employee because but not limited to plaintiff's disability, medical leave race, color, ancestry, sex/gender and/or national origin.

26. Plaintiff's sex/gender, disability, medical leave race, color, ancestry, and/or national origin, and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were substantial motivating reasons in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse employment actions against plaintiff.

27. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses

of earnings and other employment benefits.

28. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

29. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code Section 12965(c)(6), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

30. Defendants' discrimination was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**SECOND CAUSE OF ACTION**

**Hostile Work Environment Harassment on the Bases of Race; Disability, Medical Leave; Color; Ancestry; Sex/Gender, and/or National Origin**

**(Violation of Government Code § 12900, *et seq.*)**

**Against All Defendants; and Does 1 to 100, Inclusive**

31. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

32. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,* was in full force and effect and was binding on defendants. This statute requires defendants to refrain from harassing any employee because of his or her sex/gender, disability, medical leave race, color, ancestry, and/or national origin.

33. Plaintiff was subjected to harassing conduct through a hostile work environment, in whole or in part on the bases of plaintiff's sex/gender, disability, medical leave race, color, ancestry, and/or national origin, and/or other protected characteristics, in violation

of Government Code sections 12940(j) and 12923.

34. Pursuant to Government Code section 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably interfered with plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

35. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

36. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

37. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code Section 12965(c)(6), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

38. Defendants' harassment was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**THIRD CAUSE OF ACTION**

**Retaliation for Engaging in Protected Activity**

**(Violation of Government Code § 12900, *et seq.*)**

**Against Entity Defendants; and Does 1 to 100, Inclusive**

39. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

40. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.*, was in full force and effect and was binding on defendants. This statute requires defendants to refrain from retaliating against any employee making complaints or opposing

discrimination, harassment, or retaliation, or otherwise engaging in activity protected by the FEHA, including for seeking to exercise rights guaranteed under FEHA and/or assisting and/or participating in an investigation, opposing defendants' failure to provide rights, including rights to complain and to assist in a lawsuit, and/or the right to be free of retaliation, in violation of Government Code section 12940(h).

41. Plaintiff's seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including the right to be free of discrimination, harassment, or retaliation, in violation of Government Code section 12940(h), were substantial motivating reasons in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse employment actions against plaintiff.

42. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

43. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

44. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code Section 12965(c)(6), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

45. Defendants' retaliation was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

///

///

///

**FOURTH CAUSE OF ACTION**

**Failure to Provide Reasonable Accommodation**

**(Violation of Government Code § 12940(a), (i), (m), (n))**

**Against Entity Defendants; and Does 1 to 100, Inclusive**

46. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

47. At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants. This statute requires defendants to provide reasonable accommodations to known disabled employees. Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

48. Defendants wholly failed to attempt any reasonable accommodation of plaintiff's known disability. Defendants used plaintiff's disability and his need to take medical leave as an excuse for terminating plaintiff's employment.

49. Plaintiff believes and on that basis alleges that his disability and the need to accommodate his disability were substantial motivating factors in defendants' termination of his employment.

50. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

51. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

52. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code Section 12965(c)(6), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

///

53. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**FIFTH CAUSE OF ACTION**

**Failure to Engage in Interactive Process**

**(Violation of Government Code § 12940(a), (i), (m), (n))**

**Against Entity Defendants; and Does 1 to 100, Inclusive**

54. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

55. At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants. This statute requires defendants to engage in a timely, good faith interactive process to accommodate known disabled employees. Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

56. Defendants wholly failed to engage in a timely, good-faith interactive process with plaintiff to accommodate his known disabilities. Instead, defendants terminated plaintiff's employment in part because of his disabilities.

57. Plaintiff believes and on that basis alleges that his disability was a motivating factor in defendants' termination of his employment.

58. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

59. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

///

60. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code Section 12965(c)(6), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

61. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## SIXTH CAUSE OF ACTION

## Failure to Prevent Discrimination, Harassment, or Retaliation

## (Violation of Government Code § 12900, *et seq.*)

## Against Entity Defendants; and Does 1 to 100, Inclusive

62. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

63. At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

64. During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff being treated less favorably because of plaintiff's sex/gender, disability, medical leave race, color, ancestry, national origin, and/or or because plaintiff had engaged in protected activity.

65. Plaintiff believes that he was subjected to discrimination, harassment and retaliation because of his sex/gender, disability, medical leave race, color, ancestry, national origin, and/or, protected activity.

66. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiffs have sustained and continue to sustain substantial losses of earnings and other employment benefits.

67. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

68. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code Section 12965(c)(6), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

69. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## SEVENTH CAUSE OF ACTION

**Breach of Express Oral Contract Not to Terminate Employment Without Good Cause**

**(*Marvin v. Marvin* (1976) 18 Cal.3d 660)**

**Against Entity Defendants; and Does 1 to 100, Inclusive**

70. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

71. Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause. Plaintiff and defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of him under the agreement by performing his job in an exemplary manner.

72. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with him.

73. As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**EIGHTH CAUSE OF ACTION**

**Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause**

**(*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)**

**Against Entity Defendants; and Does 1 to 100, Inclusive**

74. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

75. On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

76. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

77. As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**NINTH CAUSE OF ACTION**

**Negligent Hiring, Supervision, and Retention**

**(*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038)**

**Against Entity Defendants; and Does 1 to 100, Inclusive**

78. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

///

79. Defendants owed a duty of care to plaintiff to appoint, hire, retain, and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct. Defendants owed a duty of care to plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities. Defendants owed a duty of care to plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against plaintiff.

80. Defendants breached these duties. As a result, defendants caused damages to plaintiff. As a proximate result of defendants' negligent hiring, retention, and supervision of their managers and employees, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

**TENTH CAUSE OF ACTION**

**Wrongful Termination of Employment in Violation of Public Policy**

**(*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167)**

**Against Entity Defendants; and Does 1 to 100, Inclusive**

81. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

82. Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, plaintiff's employment was terminated in part because of his protected statuses (sex/gender, disability, medical leave race, color, ancestry, national origin, and/or protected activity). These actions were in violation of, but not limited to, the FEHA, the California Constitution, Government Code section 12900, *et seq.*, and California Labor Code section 1102.5.

83. As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to

his damage in a sum according to proof.

84. As a result of defendants' wrongful termination of his employment, plaintiff has suffered general and special damages in sums according to proof.

85. Defendants' wrongful termination of plaintiff's employment was done intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages.

86. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.,* plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

## ELEVENTH CAUSE OF ACTION

**Whistleblower Retaliation**

**(Violation of Labor Code § 1102.5, *et seq.*)**

**Against Entity Defendants; and Does 1 to 100, Inclusive**

87. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

88. At all relevant times, Labor Code section 1102.5 was in effect and was binding on defendants. This statute prohibits defendants from retaliating against any employee, including plaintiff, for actually raising complaints of actual or potential illegality, for providing information of such actual or potential illegality, because the employee is believed to have engaged in such conduct, or because the employee may engage in such conduct. The statute also further prohibits defendants from retaliating against any employee, including plaintiff, where the employee refused to participate in activity that would result in a violation of the law.

89. Plaintiff raised complaints of actual and/or potential illegality, including but not limited to complaints about violations of the FEHA, California Constitution, and Government Code Section 12900 *et seq*. while he worked for defendants, and defendants retaliated against him by taking adverse employment actions, including employment

termination, against him.

90. As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

91. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

92. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

93. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Labor Code section 1102.5(j), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**TWELFTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(*Hughes v. Pair* (2009) 46 Cal.4th 1035)**

**Against All Defendants; and Does 1 to 100, Inclusive**

94. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

95. Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted extreme and outrageous misconduct and caused plaintiff severe emotional distress. Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of his livelihood, would devastate plaintiff and cause him extreme hardship.

96. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and

continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

97. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

98. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**PRAYER**

WHEREFORE, plaintiff, Lewis Nolden, prays for judgment against defendants as follows:

1. For general and special damages according to proof;
2. For exemplary damages, according to proof;
3. For pre-judgment and post-judgment interest on all damages awarded;
4. For reasonable attorneys' fees;
5. For costs of suit incurred;
6. For declaratory relief:
7. For such other and further relief as the Court may deem just and proper;

ADDITIONALLY, plaintiff, Lewis Nolden, demands trial of this matter by jury. The amount demanded exceeds $35,000.00 (Government Code § 72055).

Dated: August 18, 2026

SHEGERIAN & ASSOCIATES

By: ______________________________
Rosie Zilifyan, Esq.

Attorneys for Plaintiff,
LEWIS NOLDEN